156 So. 173

## ELLETT et al. v. NEWLAND et al.

### No. 32498.

May 21, 1934.

Rehearing Denied July 2, 1934.

H. G. Fields, of Farmerville, and Robert J. O'Neal, of Shreveport, for appellants.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellees.

ROGERS, Justice.

This suit was previously before this court on appeal from a judgment of dismissal based on an exception of no cause of action. The judgment was reversed and the case remanded for a trial on the merits. Ellett v. Newland, 171 La. 1019, 132 So. 761.

The suit is by certain depositors against the directors of the Bank of Mooringsport for the recovery of the deposits made by them between December 15, 1927, and February 20, 1928, when the bank was closed by the state bank commissioner. On the previous appeal we held, in remanding the case for trial, that if the defendants, as alleged in the petition, accepted plaintiffs' deposits knowing the bank was insolvent, they committed a tort, and, as a result thereof, were liable to plaintiffs to the extent of their losses. Defendants answered, denying they knew the bank was insolvent, and averring that the failure of the bank was due to some bad loans, the burning of the bank building, and the defalcation of its former president. Upon the trial of the case, plaintiffs' demand was rejected and plaintiffs have appealed from the judgment.

Our examination of the record has failed to convince us that plaintiffs have made out a case of malfeasance on the part of the defendants. The capital of the bank was only $15,000. It was a small institution in a small country town. The bulk of its capital stock was owned by C. E. Morefield, its president, and members of his family. The directors were men of limited business experience, operating their small business enterprises at Mooringsport, and relying largely, if not entirely, on the president and the cashier for the honest and efficient operation of the bank.

The defendant R. G. Newland became a director of the bank on December 15, 1927, on which date he bought his stock, and was elected its president as the successor of C. E. Morefield, who had resigned. Thereafter, Newland deposited $2,500 in the bank, and continued to make substantial deposits while the institution was operated as a going concern. The other defendants also made deposits, some of them in substantial amounts, up to the time the bank was closed. It would seem to be too plain for argument that defendants would not have intrusted their money to the care of the bank, if they knew or suspected it was an insolvent institution.

Mr. Morefield, the former president, owned nearly all the stock, which he desired to sell ostensibly to pay a note which was due the bank. Mr. Cummins, the cashier, thought it highly desirable the bank should cease to be a one man institution and its stock should be distributed among the citizens of the town so that they would become actively interested in the bank. Mr. Newland bought some of the Morefield stock, as did some of the other directors. Mr. Morefield also sold some of

the stock owned or controlled by him to other persons. When Morefield failed to pay his note to the bank with the proceeds derived from the sale of his stock, Newland, the new president, became uneasy, and on or about February 15, 1932, consulted the bank examiner in regard to the matter. On February 17, 1932, Newland and the bank examiner went to Shreveport for the purpose of obtaining legal advice. At that time no one knew or suspected the bank was insolvent. The bank examiner did not know it and both he and the attorney consulted by Newland advised him he could safely hold the bank open the next day, which was Saturday and a half holiday, and if Morefield failed to produce the money received from the stock he sold early Monday morning, the bank should not open. The real condition of the bank was discovered later. After the bank was closed, it developed that notes due the bank had been paid and the proceeds appropriated by the former president; that interest payments had been made and entered on the passbooks of the savings accounts and not credited to the depositors on the books of the bank. But if on Monday morning February 20, 1932, Morefield had produced the money received from the sale of his stock, the bank would have continued to operate with the approval of the bank examiner, and in the honest belief of its officers and directors the institution was solvent, until it was discovered that some of the notes carried in the bank's portfolio had been paid.

The fact the bank examiner in his semi-annual examination in 1927 called for an appraisal of the bank's assets and required the return of the dividend declared and paid as of January 1, 1927, is not sufficient to charge these defendants with knowledge the bank was insolvent in the latter part of 1931 and the beginning of 1932. Moreover, in 1927, Morefield was in charge of the bank and he and his family owned nearly all the stock in the institution. The demand of the bank examiner for an appraisal of assets and for the replacement of the dividend was received by him, and it is not shown the defendants had any knowledge whatsoever of the bank examiner's requirements. And it seems plain that if the bank examiner, himself, thought the bank was in failing circumstances in 1927, he would have closed the institution at that time and proceeded with its liquidation. Furthermore, on the trial of the case, the bank examiner was asked whether from what he knew or had discovered about the bank on June 30, 1931, and on February 20, 1932, he thought it possible for an ordinary man to become a director and go into the bank and find out about its condition between December 20, 1931, and February 20, 1932, and his answer was he did not think it would have been possible without a detailed examination of the bank's entire affairs, tracing each item and each note in the bank to ascertain whether it was genuine or not.

Plaintiffs, who have received through the liquidation of the bank 54 per cent. of their respective deposits, have not shown that defendants were guilty of such tortious conduct towards them as would render defendants liable for any losses they may suffer on their deposits.

For the reasons assigned, the judgment appealed from is affirmed.